NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0596n.06

No. 13-6185

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

KENNETH RAY MCELROY; JANET MCELROY )
)
    Plaintiffs-Appellants, )
)
v. )
)
AMYLIN PHARMACEUTICALS, INC.; ELI )
LILLY AND COMPANY; JOHN DOES 1-25; )
HAMILTON COUNTY DEPARTMENT OF )
EDUCATION; BAXTER, INC.; BAXTER )
PHARMACEUTICALS SOLUTIONS, LLC; )
WOCKHARDT LIMITED; COVIDIEN; )
MALLINCKRODT; MALLINCKRODT, INC.; )
BACHEM; WOCKHARDT UK, LTD. )
)
    Defendants-Appellees, )
)
and )
)
HAMILTON COUNTY BOARD OF EDUCATION; )
CIGNA CORPORATION; CIGNA HEALTHCARE, )
INC.; CONNECTICUT GENERAL LIFE )
INSURANCE COMPANY )
)
    Defendants. )

FILED
Aug 05, 2014
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

Before: MOORE and KETHLEDGE, Circuit Judges; TARNOW, District Judge. [*]

KETHLEDGE, Circuit Judge. Kenneth McElroy began taking a diabetes drug named

Byetta in 2006. Six years later, he began suffering abdominal problems. Without alleging much

more than that, McElroy sued the drug's manufacturers and suppliers, claiming that Byetta

---

[*] The Honorable Arthur J. Tarnow, Senior Judge for the Eastern District of Michigan, sitting by
designation.

caused his abdominal problems. The district court dismissed McElroy's claims pursuant to Rule 12(b)(6). We affirm.

We take the allegations in McElroy's complaint as true. *See Tyler v. DH Capital Mgmt., Inc.,* 736 F.3d 455, 459 (6th Cir. 2013). McElroy was born in 1960 and suffers from Type-2 diabetes. He began taking Byetta in 2006; in 2008, per the direction of his physician, McElroy began injecting the drug "in his stomach[.]" Complaint ¶5. During 2012, McElroy "began experiencing serious and life threatening abdominal problems[,]" which caused his abdomen to balloon in weight to "approximately 200 pounds in and of itself." *Id.* McElroy also developed "staph and other infections and wounds which cause him to secrete bodily fluids and bleed profusely." *Id.*

McElroy thereafter brought this lawsuit, asserting various claims under Tennessee law. The district court dismissed McElroy's claims, holding that his complaint did not allege facts supporting a plausible inference that Byetta had caused his abdominal problems. On appeal, McElroy challenges only the dismissal of his products-liability claims.

We review the district court's decision de novo. *Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 377 (6th Cir. 2009). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

To prevail on a products-liability claim under Tennessee law, a plaintiff must prove that a defective product proximately caused him to be injured. *Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir. 2000). We focus upon the causation element here.

The issue before us, therefore, is whether McElroy has alleged facts that, if taken as true, support a plausible inference that Byetta more likely than not caused his abdominal problems.

*See Iqbal*, 556 U.S. at 678. That issue is specific to McElroy's complaint. And McElroy's complaint has little to say in support of his assertion that Byetta caused his injuries. McElroy's principal allegation is that, "[b]y process of elimination, he discovered that [Byetta] was the cause [of his injuries] in mid 2012." Complaint ¶5. But McElroy nowhere explains in his complaint what his "process of elimination" was; and he affirmatively concedes that "[n]o physician has told him that there is a connection between the use of Byetta and his physical condition." *Id*. These allegations fall well short of supporting a plausible inference that Byetta caused McElroy's injuries; indeed they suggest the contrary.

McElroy also cites a 2008 FDA alert in which the agency cautioned physicians about a "suspected" association between Byetta and "acute pancreatitis[.]" But McElroy does not even allege that he has pancreatitis, instead alleging only that he has "possible pancreatitis." Complaint ¶13. And the conditions that McElroy does allege that he has suffered—"excessive sores, staph infections," and "pancreatic panniculitus and bleeding"—are simply different (notwithstanding that pancreatitis and panniculitus sound alike) from the condition mentioned in the FDA alert.

Nor is the timeline alleged in the complaint of much help to McElroy. By his own account, McElroy's problems developed six years after he began taking Byetta, and at least three years after he began injecting the drug into his stomach. Of course, there are plenty of diseases (*e.g.*, lung cancer) that can be caused by sustained exposure to a substance. But as a general matter, the longer the time frame at issue, the greater the number of potential causes for a condition. And here, for the reasons discussed above, McElroy's complaint provides no grounds to infer—and indeed affirmative grounds *not* to infer—that the sustained-exposure explanation for his injuries is the correct explanation. At best, therefore, McElroy's complaint alleges facts

that are "merely consistent with" his claim of causation. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

All that said, we recognize the difficulty faced by a plaintiff like McElroy, who is among the first to claim that a particular drug is defective. And we recognize that McElroy's condition "evokes deep sympathy[.]" *Mut. Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466, 2480 (2013). The outcome of McElroy's appeal, however, ultimately depends not on his condition, but on his complaint. And the allegations in McEloy's complaint "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The district court's judgment is affirmed.